UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN KNEISSEL,<br>    Plaintiff,<br><br>v.<br><br>CARMAX AUTO FINANCE and<br>EQUIFAX INFORMATION SERVICES,<br>LLC,<br>    Defendant. | Case No.: 0:20-cv-02520<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. §1681** *et seq.* |

Plaintiff Susan Kneissel ("Plaintiff"), through her attorneys, alleges the following against Defendant CarMax Auto Finance ("CarMax") and Equifax Information Services, LLC ("Equifax"):

## INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendant Equifax, a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit report.

2. Plaintiff's Complaint also alleges violations of the FCRA, against Defendant CarMax for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendant Equifax.

///

///

1

## JURISDICTION AND VENUE

3. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

4. Venue in this District is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. Defendants transact business here; as such, personal jurisdiction is established.

## PARTIES

6. Plaintiff Susan Kneissel is a natural person residing in the city of Saint Paul in Ramsey County, Minnesota.

7. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

8. Defendant CarMax is a car retailer and is also a *furnisher*, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, CarMax is regularly engaged in the business of furnishing credit information to the credit reporting agencies. CarMax's principal place of business is located at 12800 Tuckahoe Creek Parkway Richmond, VA 23238. CarMax can be served through its agent for service of process, Corporation Service Company, located at 2345 Rice St, Suite 230, Roseville, MN 55113.

9. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the

2

purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its agent for service of process, Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, Georgia 30092.

10. Upon information and belief Equifax disburses *consumer reports* to third parties under contract for monetary compensation.

11. At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12. Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

13. Defendant Equifax reports consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

14. Defendant Equifax's credit reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and

status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

15. Defendant Equifax gains access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

16. The information reported by Defendant Equifax contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendant's consumer credit reports.

17. The majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

18. These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

19. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

20. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

21. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

22. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

23. Defendant Equifax obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of her consumer credit report, as well as the individuals account tradelines.

24. Defendant Equifax is well aware that the effect of a reaffirmation of a debt is that the debt is not discharged, meaning that the consumer remains liable for the debt and continues making payments on the debt.

25. Defendant Equifax had notice of Plaintiff's bankruptcy through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendants reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as in individual account tradelines.

26. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Equifax

obtains the bankruptcy case information, as well as from information provided to Equifax from furnishers of account/tradeline information.

27. Rather than following reasonable procedures to assure maximum possible accuracy, Defendant Equifax reports information regarding pre-bankruptcy debts even if that information ignores or contradicts information already known by Defendants, information provided by furnishers of account/tradeline information, or information contained in public court records that Defendant has obtained through its independent efforts, or could easily obtain through reasonably available public records.

28. Defendant Equifax is on continued notice of its inadequate post-bankruptcy reporting procedures, including reporting inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for inaccurate reporting following consumer bankruptcies.

29. In or around December 2018, Plaintiff obtained a loan with CarMax Auto Finance (the "Account"), account No. 3135*

30. On or about December 30, 2019, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Minnesota (St. Paul), petition number 19-34002.

31. During the bankruptcy process, Plaintiff reaffirmed her obligations under the Account, on or about January 23, 2020, meaning Plaintiff remained personally responsible for the debts and the same were not included in her bankruptcy discharge.

32. Plaintiff received a discharge in bankruptcy court on or about March 30, 2020 and continued making regular payments on the reaffirmed debt.

33. Plaintiff filed for bankruptcy and reaffirmed the Account to rebuild and improve her credit.

34. Sometime after Plaintiff's bankruptcy discharge, Plaintiff obtained her Equifax, nonparty Experian, and nonparty Trans Union consumer credit reports to make sure the bankruptcy reporting was accurate.

35. Plaintiff learned Equifax was inaccurately reporting Plaintiff's reaffirmed Account as being included in/discharged by Plaintiff's bankruptcy, which conveys to creditors/lenders that the account was discharged or non-current/non-paid, even though Plaintiff reaffirmed the debt and continued to make ongoing payments.

36. Before filing for bankruptcy, Plaintiff never missed a payment on the Account. Plaintiff has continued to make timely payments on the Account and is current on all payments to date on the Account.

37. Plaintiff reaffirmed the Account during bankruptcy, remaining personally liable for the obligation and the debt was indisputably not discharged. Plaintiff did this to maintain some of her credit history and to rebuild/re-establish credit through timely monthly payments on the reaffirmed Account.

38. However, when Plaintiff pulled her credit reports, Plaintiff discovered that Equifax was not reporting the Account's positive payment history despite reaffirmation of the debt.

39. Equifax's reporting was therefore patently false and materially misleading, as the Account was reaffirmed and not discharged by Plaintiff's bankruptcy and Plaintiff continued to make timely monthly payments on the Account.

40. On or about August 05, 2020, Plaintiff sent a letter to Equifax disputing its inaccurate reporting of the Account.

41. The letter specifically advised that Plaintiff did not include the Account in her bankruptcy, remained personally obligated for the debt, and continued to make regular payments on the Account.

42. Upon information and belief, Equifax received Plaintiff's dispute letter.

43. Upon information and belief, Equifax forwarded Plaintiff's dispute to CarMax within 5 business days of receipt.

44. On or about August 17, 2020, Equifax responded to Plaintiff's dispute letter.

45. Equifax's response indicated that the Account was reporting accurately and that the "creditor has verified to [Equifax] that the current status is being reported correctly".

46. Upon information and belief, Equifax did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to CarMax. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Equifax through Plaintiff's reported payment history regarding on the Account, Equifax merely parroted information furnished by CarMax despite

8

awareness that the information was factually inaccurate and conflicted with information known by Equifax.

47. Upon information and belief, CarMax failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Equifax. Consequently, CarMax continued to furnish inaccurate data to Defendant Equifax.

48. As a result of Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

49. Upon information and belief, had Defendant Equifax accurately reported the Account as a positive account with a positive payment history, Plaintiff's credit score and credit worthiness would have been better.

50. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

51. Upon information and belief Plaintiff applied for a credit card with JP Morgan Chase and Discover and was denied due to Defendants inaccurate reporting which was published to JP Morgan Chase and Discover in its review of Plaintiff's application.

## COUNT I
### Defendant Equifax
**(Violations of the FCRA, 15 U.S.C. § 1681 *et seq.*)**

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53. The FCRA requires credit reporting agencies, like Equifax, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

54. Equifax negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and also by failing to report accurate information when placed on notice that the information Equifax is reporting is inaccurate, and/or otherwise contradicted by information known by Equifax or reasonably available to Equifax.

55. Consequently, Defendant routinely reports inaccurate, and materially misleading information about consumers like Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendant possesses information inconsistent with the reported information, and possess information establishing that the reported information is in fact inaccurate.

56. Defendants possesses information from which they know the reported information is inaccurate, as Defendant knew Plaintiff's payment history prior to bankruptcy, and knew that Plaintiff's payments remained ongoing, and that the debt was reaffirmed.

57. Defendant knew or should have known of their obligations under the FCRA, especially pertaining to reaffirmed debts. These obligations are well established by the plain language of the FCRA, well-established case law, and in prior cases involving Defendant from which Defendant is on notice of their unreasonable procedures.

58. Defendant has obtained or has available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy and reaffirm a debt.

59. Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

60. Defendant voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy, listed debts, and reaffirmation, for the purpose of reporting this information in their consumer credit reports.

61. The diligence Defendant exercises in recording consumer bankruptcy filings is not replicated in Defendant's reporting of the effect of the bankruptcy upon consumer debts, including reaffirmed debts.

62. Despite knowledge of its legal obligations, Defendant acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the FCRA.

63. Defendant inaccurately reported Plaintiff's reaffirmed Account as included in Plaintiff's bankruptcy when Defendant knew Plaintiff continued to make timely payments on the Account, and remained liable for the Account, which was excluded from her discharge.

64. Defendant therefore violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

65. The inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, and emotional and mental pain and

anguish, a decreased credit score. Moreover, the inaccurate reporting of Plaintiff's Account has deprived Plaintiff of credit opportunities and resulted in credit denials.

66. In addition to failing to follow reasonable procedures, Defendant Equifax willfully and/or negligently violated 15 U.S.C. §§ 1681(i) by failing to perform a reasonable reinvestigation of Plaintiff's consumer disputes, as the FCRA requires.

67. Even after Plaintiff notified Equifax of the inaccurate information it included in Plaintiff's credit file, Equifax continued to inaccurately report the reaffirmed Account as "included in bankruptcy."

68. Defendant failed to reasonably investigate, despite already possessing independent knowledge of Plaintiff's Chapter 7 Bankruptcy, and the effect thereof on the reaffirmed account, as well as knowledge of Plaintiff's payment history and ongoing payments.

69. Defendant unreasonably refused to take the corrective measures required by the FCRA to correct, modify or update, inaccurate information on Plaintiff's consumer report.

70. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information or delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

71. When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

72. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

73. Thus, in addition to violating the FCRA by failing to follow reasonable procedures, Defendant additionally violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiffs notified Defendant of the inaccurate information in Plaintiff's credit file.

74. Instead of reasonably reinvestigating Plaintiff's dispute, Equifax "verified" the tradeline was accurate and continued to report the reaffirmed Account as "included in bankruptcy."

75. Defendant Equifax's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    a) Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    b) Failing to consider all relevant information while investigating Plaintiff's dispute.

    c)    Failing to include all relevant information when notifying CarMax of Plaintiff's dispute.

76. Defendant's acts, as described above, were done willfully and knowingly.

77. Defendant is a direct and proximate cause, as well as a substantial factor in causing damages and harm to Plaintiff. Consequently, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

78. Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm caused by Defendant. Plaintiff also suffers interference with daily activities, as well as physical and emotional distress, including, without limitation, emotional and mental anguish, headaches, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## COUNT II
### Defendant CarMax Auto Finance
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

79. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

80. The FCRA requires that furnishers of information like CarMax to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the credit reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all credit reporting agencies to which the furnisher has provided the inaccurate information.

81. CarMax knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. CarMax obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, CarMax acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

82. Plaintiff disputed the CarMax tradeline through national CRA Equifax.

83. Thereafter, the credit reporting agencies forwarded Plaintiff's dispute to CarMax, notifying CarMax that Plaintiff was disputing the information it had furnished about the Account.

84. CarMax received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

85. CarMax continues to furnish inaccurate information about Plaintiff Equifax, even though CarMax possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

86. The inaccurate CarMax account materially and adversely affects Plaintiff's credit standing.

87. On at least one occasion within the past two years, by example only and without limitations, Defendant CarMax violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Equifax.

88. CarMax violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d) Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

f) Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

g) Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

89. CarMax unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

90. CarMax is a direct and proximate cause, as well as substantial factors in causing damage and harm to Plaintiff.

91. Consequently, CarMax is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Susan Kneissel respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.  Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 11th day of December 2020,

By: *s/Jenna Dakroub*
Jenna Dakroub
Bar Number: 0401650
*Attorneys for Plaintiff, Susan Kneissel*
**Price Law Group**
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (818) 600-5513
Fax: (818) 600-5413
E: jenna@pricelawgroup.com